SMB 7/28/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
08 JUL 28 AM 11: 08
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, | ) | Magistrate Case No. '08 MJ 2290 |
| v. | ) | COMPLAINT FOR VIOLATION OF |
| **Abraham IBARRA (D1)** **and** **Felix Adolfo IBARRA (D2)** Defendants. | ) | Title 8, U.S.C., Section 1324(a)(2)(B)(iii)- Bringing in Illegal Aliens Without Presentation |

The undersigned complainant being duly sworn states:

On or about **July 26, 2008**, within the Southern District of California, defendants **Abraham IBARRA (D1) and Felix Adolfo IBARRA (D2)**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely **Patricia Rivera-Mata, Maria Del Carmen GOMEZ-Nunez,** and **Imelda ALVAREZ-Cedillo**, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens, and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

Alfredo Loperena, Enforcement Officer
U.S. Customs and Border Protection

Sworn to before me and subscribed in my presence, this **28th** day of **July, 2008**.

UNITED STATES MAGISTRATE JUDGE

SMB 7/28/08

## PROBABLE CAUSE STATEMENT

I, United States Customs and Border Protection (CBP) Enforcement Officer Sergio Barron, declare under penalty of perjury the following to be true and correct:

The complainant states that **Patricia Rivera-Mata, Maria Del Carmen GOMEZ-Nunez,** and **Imelda ALVAREZ-Cedillo** are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is material; that it is impracticable to secure their attendance at trial by subpoena; and that they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On July 26, 2008, at approximately 0438 hours, **Abraham IBARRA (Defendant 1)** made application for admission into the United States from Mexico at the San Ysidro Port of Entry vehicle entrance, as the driver of a 1995 Dodge Grand Caravan. D1 was accompanied by **Felix Adolfo IBARRA (Defendant 2)**. D1 approached a U.S. Customs and Border Protection (CBP) Officer manning the booth for inspection and entry into the United States. D1 told the CBP officer he has owned the vehicle for one year, was coming from a party in Mexico, and was not bringing anything from Mexico. The CBP officer inspected the vehicle undercarriage and noticed numerous tool markings and a strong fuel odor. The CBP officer escorted the occupants and vehicle to secondary for further inspection.

In secondary, a CBP canine officer utilized his Narcotic/Human Detection Dog (N/HDD) to screen the vehicle and the N/HDD alerted to the vehicle's undercarriage. CBP officers lifted the floor rug and discovered a hinged access panel to a non-factory compartment affixed to the undercarriage. CBP officers removed the bench seat on top of the panel, lifted the access panel which revealed four females concealed in the compartment. CBP officers extracted the four females and were determined to be citizens of Mexico with no entitlements to enter the United States. Three of the four females are now identified as material witnesses: **Patricia Rivera-Mata (MW1), Maria Del Carmen GOMEZ-Nunez (MW2), Imelda ALVAREZ-Cedillo (MW3).**

The non-factory compartment was constructed out of thin sheet metal which was welded to the vehicle's frame and body. The access cover was constructed out of thick plywood board. The access cover was not accessible without removing the middle bench seat. The rails which secured the middle bench seat to the vehicle were screwed onto the access cover. The fuel tank was removed and placed where the spare tire would normally be. Electrical lines were routed through the compartment and placed on top of the aliens.

During a videotaped proceeding D1 was advised of his Miranda rights. D1 acknowledged his rights and elected to answer questions without an attorney present. During a subsequent interview D1 stated at about 2 AM on the morning of July 26, 2008, a friend named Michael called him to ask for a favor. D1 stated Michael asked him if he could drive a vehicle from Tijuana, Mexico to L Street in Chula Vista, California and turn the vehicle over to a family member. D1 stated he claimed ownership of the vehicle to the primary CBP officer and once in secondary told the officer he had borrowed the vehicle.

**Continued on page 2**

SMB
7/28/08

**Probable Cause Statement Continuation**
**RE: Abraham IBARRA et al**

D1 stated he did not have any knowledge of the undocumented aliens concealed in the vehicle. D1 stated he was to travel to his mother's house after turning the vehicle over to Michael's family member.

During a videotaped proceeding D2 was advised of his Miranda rights. D2 acknowledged his rights and elected to answer questions without an attorney present. During a subsequent interview D2 stated he was at a party last night when a friend named "Rudy" showed up to pick him up. D2 stated Rudy told him that his cousin, D1, was on the phone and wanted to talk to him. D1 told D2 he wanted him to accompany him in taking a vehicle to San Diego, California and in return would pay him money. D2 and Rudy went to pick up D1 and afterward drove to an AM/PM convenience store in Tijuana, Mexico. D2 stated he, D1, and Rudy took custody of the 1995 Dodge Caravan from an unknown male and drove the vehicle to the United States border entrance. Near the border, Rudy departed the vehicle, told D1 to take the vehicle to a McDonalds located in San Ysidro, California and a male would be waiting for him. The male knew the description of the van and was also going to ask if the van belonged to Rudy. D2 stated while in line at the border to enter the United States, D1 told him not to get nervous or scared. D2 stated he asked D1 what was he smuggling and in response D1 told him to stop asking questions. D2 stated he knew they were committing a smuggling act but thought the vehicle contained narcotics because he did not see anybody in the van's rear cargo area. D2 stated D1 knew of the undocumented aliens concealed in the vehicle.

On separate videotaped interviews, all three Material Witnesses declared they are citizens of Mexico without legal rights or entitlements to enter the United States. MW1 stated she was to pay a smuggling fee of $3,500.00 U.S. dollars and intended to travel to Sacramento, California. MW2 stated she was going to pay a smuggling fee of $3,000.00 U.S. dollars and intended to travel to Los Angeles, California. MW3 stated she was going to pay a smuggling fee of $3,000.00 U.S. dollars and intended to travel to San Diego, California.

Executed on this 26th day of July 2008 AT 1700 hours.

________________________________

Sergio Barron / CBP Enforcement Officer

On the basis of the facts presented in the Probable Cause Statement consisting of **(2)** page(s), I find probable cause to believe that the defendant named therein committed the offense on **July 26, 2008** in violation of Title 8, United States Code, Section 1324.

__________________________ ____________________

U.S. MAGISTRATE JUDGE DATE / TIME

**Probable Cause Statement Continuation**
**RE: Abraham IBARRA et al**

D1 stated he did not have any knowledge of the undocumented aliens concealed in the vehicle. D1 stated he was to travel to his mother's house after turning the vehicle over to Michael's family member.

During a videotaped proceeding D2 was advised of his Miranda rights. D2 acknowledged his rights and elected to answer questions without an attorney present. During a subsequent interview D2 stated he was at a party last night when a friend named "Rudy" showed up to pick him up. D2 stated Rudy told him that his cousin, D1, was on the phone and wanted to talk to him. D1 told D2 he wanted him to accompany him in taking a vehicle to San Diego, California and in return would pay him money. D2 and Rudy went to pick up D1 and afterward drove to an AM/PM convenience store in Tijuana, Mexico. D2 stated he, D1, and Rudy took custody of the 1995 Dodge Caravan from an unknown male and drove the vehicle to the United States border entrance. Near the border, Rudy departed the vehicle, told D1 to take the vehicle to a McDonalds located in San Ysidro, California and a male would be waiting for him. The male knew the description of the van and was also going to ask if the van belonged to Rudy. D2 stated while in line at the border to enter the United States, D1 told him not to get nervous or scared. D2 stated he asked D1 what was he smuggling and in response D1 told him to stop asking questions. D2 stated he knew they were committing a smuggling act but thought the vehicle contained narcotics because he did not see anybody in the van's rear cargo area. D2 stated D1 knew of the undocumented aliens concealed in the vehicle.

On separate videotaped interviews, all three Material Witnesses declared they are citizens of Mexico without legal rights or entitlements to enter the United States. MW1 stated she was to pay a smuggling fee of $3,500.00 U.S. dollars and intended to travel to Sacramento, California. MW2 stated she was going to pay a smuggling fee of $3,000.00 U.S. dollars and intended to travel to Los Angeles, California. MW3 stated she was going to pay a smuggling fee of $3,000.00 U.S. dollars and intended to travel to San Diego, California.

Executed on this 26th day of July 2008 AT 1700 hours.

_______________________
Sergio Barron / CBP Enforcement Officer

On the basis of the facts presented in the Probable Cause Statement consisting of (2) page(s), I find probable cause to believe that the defendant named therein committed the offense on **July 26, 2008** in violation of Title 8, United States Code, Section 1324.

_______________________
U.S. MAGISTRATE JUDGE

7/27/08 - 1210 PM
DATE / TIME